UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LANCE KIRKSEY,

        Petitioner,

                                  CASE NO. 2:06-CV-14212
v.                              HONORABLE GEORGE CARAM STEEH

SUSAN DAVIS,

        Respondent.
                               /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

Michael Lance Kirksey ("Petitioner"), a Michigan prisoner, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree premeditated murder, Mich. Comp. L. § 750.316(a) and possession of a firearm during the commission of a felony, Mich. Comp. L. § 750.227b, following a jury trial in the Oakland County Circuit Court in 2003. He was sentenced to life imprisonment without the possibility of parole and a consecutive term of two years imprisonment. In his pleadings, Petitioner raises claims concerning the voluntariness of his confession, his right to cross-examine witnesses, and his ability to present a defense. For the reasons stated, the Court denies the petition for writ of habeas corpus.

### FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from the shooting death of Dominique Wade, a/k/a Dawud El-Amin in Pontiac, Michigan on September 9, 2002. The Michigan Court of Appeals set forth

1

the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Defendant's convictions arise from the shooting death of Dominique Wade, also known as Dawud El-Amin, in the city of Pontiac. Testimony indicated that defendant approached a vehicle occupied by Wade and two others, Tamika Roberson and her five-year-old nephew. Defendant made an inquiry regarding "weed" and regarding whether Wade and Roberson knew "Dawud." Defendant then pulled out a gun and shot Wade, shooting him twice in the back, and fled the area while firing more shots in the air.
>
> Three days later, the sixteen-year old-defendant was arrested in Dearborn Heights on an unrelated matter. Defendant gave a false name and a false birth date, which indicated that he was seventeen years old, but later gave his true name and age. While in the booking area of the Dearborn Heights Police Department, defendant showed a newspaper article about the shooting to Officer Thomas Marinkovich. He also stated that he "did it." Officer Marinkovich then questioned the defendant further about the shooting. Defendant provided additional verbal and written statements to Detective Paul McNeil-McDougal after being transported to the Pontiac Police Department. Defendant was later identified at trial by witnesses, including Roberson, as the person who shot the victim. At trial, defendant did not dispute that he shot the victim but claimed that it was not his intent to kill and that he therefore should be found guilty only of second-degree murder, rather than first-degree premeditated murder.

*People v. Kirksey*, No. 250003, 2004 WL 2290478, *1 (Mich. Ct. App. Oct. 12, 2004) (unpublished). At the close of trial, the jury convicted Petitioner of first-degree premeditated murder and possession of a firearm during the commission of a felony. The trial court subsequently sentenced him to life imprisonment without the possibility of parole and a consecutive term of two years imprisonment.

Following sentencing, Petitioner filed a motion for a new trial with the Oakland County Circuit Court, alleging that the trial court erred by admitting his confession because the statement was involuntary. The trial court denied the motion. Petitioner then filed an appeal as of right with the Michigan Court of Appeals asserting the same claims contained in the current

petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Kirksey*, No. 250003, 2004 WL 2290478 (Mich. Ct. App. Oct. 12, 2004) (unpublished). Petitioner then sought leave to appeal with the Michigan Supreme Court, which was denied. *People v. Kirksey*, 472 Mich. 939, 698 N.W.2d 395 (2005).

Petitioner thereafter filed the present habeas petition asserting the following claims:

I.  The court committed reversible error by admitting an involuntary statement made in violation of Petitioner's Fourth Amendment rights and in violation of the Michigan Juvenile Code.

II. The court committed reversible error when it prevented defense counsel from cross-examining a prosecution witness on relevant topics in violation of his Sixth Amendment Right to full cross-examination.

III. The court committed reversible error when it refused to allow the testimony of a witness to testify as to his state of mind, violating his Sixth Amendment right to introduce evidence in his defense and his Fourteenth Amendment due process right.

Respondent has filed an answer to the petition contending that it should be denied.

## STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

4

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## ANALYSIS

### A. Admissibility of Petitioner's Statements

Petitioner asserts that the trial court erred when it admitted his statements for three reasons: (1) the statement was taken in violation of Michigan's Juvenile Code; (2) the statement violated his Fourth Amendment rights because it was taken prior to *Miranda* warnings; and (3) the statement was involuntary. Respondent disputes these claims.

#### 1. Juvenile Code Violation

Petitioner's main argument is that the trial court erred when it admitted his confession which he alleges was taken in violation of Michigan law regarding the handling of juveniles. He argues that because he was 16 years old at the time of his arrest, the police were required to immediately take him before the family division of a circuit court pursuant to Mich. Comp. L. § 764.27. Respondent contends that this portion of Petitioner's claim is a state law matter which

is not cognizable upon habeas review. The Michigan Court of Appeals denied relief on this issue, ruling that Petitioner had not established that Mich. Comp. L. § 764.27 applies to a juvenile who is charged as an adult with murder (as Petitioner was in this case). *See Kirksey*, 2004 WL 2290478 at *2.

This Court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas relief is unavailable for mere errors of state law and a federal court will not review a state court's decision on a matter of purely state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Long v. Smith*, 663 F.2d 18 (6th Cir. 1981). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). In this case, whether the authorities followed or were required to follow Mich. Comp. L. § 764.27 is a state law issue, which is not cognizable upon habeas review. Habeas relief is therefore not warranted on this claim.

  2. Voluntariness of Statement

Petitioner claims that his statements to the police were made without *Miranda* warnings and that the admission of those statements violated his Fourth Amendment rights. However, the Fourth Amendment does not address the issue of involuntary statements to the police. The Fifth Amendment prohibits the use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-307 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). Therefore, this Court will analyze the voluntariness of the confession under the Fifth

6

and Fourteenth Amendments, rather than the Fourth Amendment as the Petitioner suggests.

          a.  <u>Voluntariness under the Fifth Amendment</u>

Petitioner asserts that his statement was involuntary because he was not given his *Miranda* rights.  The Fifth Amendment provides that no "person. . . shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court held that this privilege against self-incrimination protects an individual not only against being compelled to testify against himself in court but also against the "inherently compelling pressures of custodial interrogation."  In order to protect those rights, the Supreme Court laid out a specific set of warnings, known as *Miranda* warnings, which must be given to suspects who are subject to custodial interrogation.  Unless those *Miranda* rights are given and then knowingly, voluntarily and intelligently waived, any incriminating responses to questioning will be inadmissible.  *See Pennsylvania v. Muniz*, 495 U.S. 582, 589 (1990).

However, not all statements made in custody are deemed inadmissible under the Fifth Amendment, even without *Miranda* warnings.  "'Interrogation' . . . must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980).  "Volunteered statements of any kind are not barred by the Fifth Amendment" and are therefore admissible.  *Miranda*, 384 U.S. at 478.

In this case, the state trial court found that Petitioner's statements were volunteered, such that *Miranda* warnings were unnecessary.  The Michigan Court of Appeals affirmed, finding that Petitioner initiated the conversation by spontaneously showing a newspaper article about the murder to Officer Marinkovich.  The court also ruled that Officer Marinkovich's

question, "You did what?" was a natural response to the Petitioner's vague statement, "I did it," and did not constitute interrogation. *See Kirksey*, 2004 WL 2290478 at *1-2.

The United States Supreme Court has defined "interrogation" as "words and actions on the part of police officers that they should [know are] reasonably likely to elicit an incriminating response." *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003) (citing *Rhode Island v. Innis*, 466 U.S. at 302). The state courts found that Officer Marinkovich's question was not designed to elicit incriminating statements and was not an interrogation; rather it was made in an effort to clarify Petitioner's spontaneous and vague statement regarding the newspaper article. Petitioner has presented no evidence or case law which suggests that the state courts' determination is contrary to clearly established Supreme Court precedent or an unreasonable application of the law or the facts. Because the statement was volunteered, Petitioner's Fifth Amendment rights and his rights under *Miranda* were not violated. Habeas relief is not warranted on this basis.

      b. <u>Voluntariness under the Fourteenth Amendment</u>

In addition to being in compliance with *Miranda*, in order for a confession to be voluntary, it must comport with the Due Process Clause of the Fourteenth Amendment. Under clearly established Supreme Court precedent, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. at 109. To determine whether a confession is voluntary, a court must look to the totality of the circumstances. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993). Those circumstances include:

    1. Police Coercion (a "crucial element")
    2. Length of Interrogation
    3. Location of Interrogation
    4. Continuity of Interrogation
    5. Suspect's Maturity
    6. Suspect's Education
    7. Suspect's Physical Condition & Mental Health
    8. Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. at 693-94. All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. *See Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. *Id.*

  As noted, the Michigan Court of Appeals determined that Petitioner's confession was voluntary. Having reviewed the record, this Court is convinced that the state court's determination that Petitioner's confession was voluntary is consistent with Supreme Court precedent and constitutes a reasonable application thereof. First, Petitioner has failed to establish police coercion. He does not claim that the police interrogated him at length, injured him, or otherwise overbore his will. When he gave his initial statement to Officer Marinkovich, he was only in custody for approximately 30 minutes. His only arguments for asserting that his confession was involuntary are: (1) he was not given *Miranda* warnings, (2) he did not have a parent present at the interrogation; and (3) the police did not comply with the juvenile code. None of this indicates coercive behavior sufficient to overbear his free will.

Additionally, while Petitioner was only 16 years old at the time of the interrogation, he had a lengthy criminal history and extensive experience within the justice system. He had a 10th grade education and an average IQ. There is no evidence that Petitioner was physically or mentally impaired at the time he made his statement. Additionally, during the evidentiary hearing prior to trial, Petitioner admitted that the arresting officer read him his *Miranda* rights when he was initially arrested.[1] At that same evidentiary hearing, Petitioner admitted that he wanted to get something off of his chest – that, in a way, he wanted to tell about the murder. Having scrutinized the relevant factors, the Court is satisfied that Petitioner's confession was voluntary and that his constitutional rights were not violated by the admission of his police statements into evidence at trial. Habeas relief is not warranted on this claim.

B.    **Limitation on Cross-Examination**

Petitioner next asserts that the trial court violated his Sixth Amendment right when it prevented defense counsel from fully cross-examining two prosecution witnesses, the victim's wife Leslie Wade and Pontiac Police Officer Brian Wood. Petitioner claims that he was prevented from cross-examining Ms. Wade with regard to the character and illegal activity of the victim. Petitioner also claims that he was prevented from cross-examining Officer Wood about whether the killing was consistent with turf wars. Respondent contends that this claim lacks merit.

The Sixth Amendment guarantees the rights of the accused "to be confronted with witnesses against him." This case concerns the category of Confrontation Clause cases where

---

[1] The trial court did not specifically adopt his position; rather it ruled that whether or not he had received *Miranda* warnings, his confession was volunteered and not the product of interrogation.

10

restrictions imposed by law or by the trial court have compromised the effectiveness of cross-examination.  *See Delaware v. Fensterer*, 474 U.S. 15, 18 (1985).  However, the right to confrontation is not absolute.  "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety or interrogation that is repetitive and only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Christian*, 786 F.2d 203, 212-213 (6th Cir. 1986).  A key purpose of cross-examination is "revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand."  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

 The Michigan Court of Appeals upheld the trial court's limitation on the cross-examination of the two prosecution witnesses.  The court ruled that the trial court did not abuse its discretion because:  (1) Petitioner did not establish an adequate foundation for examining Leslie Wade about a shooting that occurred at the home of Jay Lee's mother; (2) Petitioner's counsel was argumentative when questioning Leslie Wade about street etiquette; (3) Petitioner's questions to Leslie Wade about the victim's tattoos were outside the scope of direct examination and Petitioner did not make an adequate offer of proof concerning the relevance of the tattoos; and (4) Petitioner did not make an offer of proof at trial establishing the admissibility and relevance of Officer Wood's opinion testimony.  *See Kirksey*, 2004 WL 2290478 at *2-3.

 Petitioner's main contention is that some of this testimony was relevant, although he does not dispute the specific grounds offered by the trial court for excluding the evidence.

11

Petitioner as not established that the state court violated his confrontation rights by limiting the cross-examination of these witnesses. The trial court's limitations were reasonable and meant to prevent confusion, to limit unfounded questions and improper argument, and to preclude irrelevant information.

Moreover, even assuming that the state court erred in its evidentiary rulings and violated Petitioner's confrontation rights, Petitioner is not entitled to relief from this Court. A federal court will only grant habeas relief where a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Here, it is highly unlikely that the limits on cross-examination had such an effect on the jury. Petitioner admitted to shooting the victim– his only claim was that he did not intend to kill him. Even if the jury had heard that the victim was a drug dealer involved in turf wars, this evidence would not have supported Petitioner's claim that he did not intend to kill the victim. In fact, given the violent nature of the drug trade, a jury might be more, not less, apt to believe that Petitioner intended to kill the victim for fear of retaliation or to eliminate the competition. Thus, even if the trial court somehow erred in limiting the cross-examination of these witnesses, any error was harmless under *Brecht*. Habeas relief is not warranted on this claim.

**C.     Opportunity to Present a Defense**

Finally, Petitioner asserts that he was denied the right to present a complete defense when the trial court refused to allow the hearsay testimony of Heather Luttman at trial. Petitioner argues that the trial court wrongfully excluded Heather Luttman's testimony that he was seeing the victim's ghost by deeming it hearsay. He claims that the testimony was not

12

hearsay because it was offered to show his state of mind, not for the truth of the matter asserted. Respondent contends that this claim lacks merit.

The right of the accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas,* 388 U.S. 14, 19 (1967). The Constitution guarantees a criminal defendant "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, "[t]he accused does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). The Supreme Court has held that state rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (internal citations omitted).

The Michigan Court of Appeals denied relief on this claim, finding that even if the disputed testimony was not hearsay it was irrelevant and inadmissible because Petitioner's state of mind after the crime was not relevant to his state of mind at the time of the offense. The court concluded that Petitioner had not shown that he was deprived of his due process right to present a defense. *See Kirksey*, 2004 WL 2290478 at *3.

This Court agrees and finds that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner's state of mind after the offense was not relevant to his intent when he committed the shooting. Petitioner's defense at trial was that he meant to hurt the victim, not to kill him. Even if the jury had heard Ms. Luttman's testimony that Petitioner felt he was being haunted by the victim's ghost, that

13

testimony, at best, only indicates that he is upset or feels guilty about killing the victim. It does not establish that he did not intend to commit the crime. Petitioner has not shown that he was denied a meaningful opportunity to present a defense by the exclusion of this testimony. Habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

Dated: February 23, 2009

                                  S/George Caram Steeh
                                  GEORGE CARAM STEEH
                                  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 23, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk